| | |
|---|---|
| Minute Order Form (06/97) | |

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5753 | **DATE** | 4/4/2002 |
| **CASE TITLE** | Sultan vs. American NTN Bearing Manufacturing Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [21-1] is granted on all claims. Judgment entered in favor of defendant and against plaintiff.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 0 8 2002 date docketed | 42 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/5/2002 date mailed notice | |
| MD | courtroom deputy's initials | 02 APR -5 PM 15:03 Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**

APR 0 8 2002

MIR MAHBOOB SULTAN, )
)
Plaintiff, )
)
vs. ) No. 00 C 5753
)
AMERICAN NTN BEARING, )
MANUFACTURING CORPORATION, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Before this court is defendant American NTN Bearing Manufacturing Corporation's ("ANBM") motion for summary judgment on the claim of plaintiff, Mir Mahboob Sultan, that defendant discriminated against him based on national origin and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq*. ANBM has denied the material allegations of the complaint and asserts affirmatively that it acted properly in dismissing plaintiff from his employment in accordance with its own policies and procedures. The court's jurisdiction rests in 42 U.S.C. § 2000e-5(f)(5) and 28 U.S.C. 1343(a)(4). For the reasons set forth below, the court grants summary judgment in favor of ANBM.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

42

party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**FACTS STATED IN A LIGHT MOST FAVORABLE TO THE PLAINTIFF**

ANBM was founded in Japan in 1918 and is one of the "world's leading general manufacturer[s] of bearings." Plaintiff is of Indian national origin and of Islamic (Muslim) religion. When plaintiff first became employed with ANBM on May 6, 1994 (¶15),[1] he received an employee handbook. The handbook provided an anti-harassment policy and designated that an employee channel a complaint of harassment to his "immediate supervisor or the Human Resources Department. There will be a thorough investigation of the matter and appropriate corrective action, if warranted, will be taken." (Def.'s Ex. F at p. D-2.) The handbook, in another section, also provided that defendant will take disciplinary action including and up to discharge if it finds that an employee commits insubordination. (*Id.* at p. D-4.) Plaintiff understood these terms of the employee handbook. (¶16.)

---

[1] Paragraph references 1 through 58 are to defendant's Rule 56.1 statement of material facts and paragraph references 59 through 72 are to plaintiff's Rule 56.1 statement of additional facts.

2

During the course of his employment with ANBM, plaintiff's foreman, Richard Russo ("Russo"), engaged in a pattern of conduct expressing disrespect for plaintiff, his Indian background and his religious faith. For example, Russo asked plaintiff questions such as how many wives the Prophet Mohammed had (¶21), called plaintiff various names such as "stupid Indian," "Indian", "immigrant", "ancient," "ancient hicaba," "camel jockey," "Elephant Boy," and "Ghandi." (¶¶25, 59, 63, 65, and 69-71.) Russo would also bow in a derogatory and insulting manner in plaintiff's presence, which is usually a gesture made by Indians who pray. (¶69.) Russo also insulted plaintiff for his entry of a poster in an ANBM art contest. (¶26(f).) Further, Russo, as a foreman, did not extend help to plaintiff as he should have. Russo also owed plaintiff for buying him lunches, demanded and received various items from plaintiff such as a paid evening at a hotel and dinner for Russo and his wife, a radar detector, and Indian cologne. (¶¶31 and 72.) Russo invited plaintiff, his wife and children to his house but did not leave plaintiff's name at the security gate, so plaintiff's family was not allowed in. Russo also rubbed a $10 bill (¶65) and plaintiff's paycheck (¶26(e)) against his groin before giving it to plaintiff.[2]

---

[2] In response to ANBM's motion for summary judgment, plaintiff provided an affidavit from another foreman, Al Ramirez ("Ramirez"). According to ANBM, plaintiff uses this affidavit to allege a new theory of liability that Russo wanted to fire plaintiff because of his national origin. In 1998, Russo expressed to Ramirez his intent to fire plaintiff because he was Indian and would have to go back to India. (Ramirez Aff. ¶¶ 4 and 5). Russo allegedly encouraged Ramirez to harm plaintiff by denying him overtime and not helping plaintiff fix or maintain the line. (*Id.* ¶7.)

Upon receiving the affidavit, this court granted ANBM's motion to depose Ramirez. ANBM then included Ramirez's deposition testimony. As to the intent to fire occasion, which occurred in October 1998, Ramirez said that Russo blamed plaintiff for his line doing poorly in terms of productivity, stating:

A: [Russo] was like, "Man, I don't know what to do with this guy. I wish I could fire him because he couldn't produce what he's supposed to. And it looks like instead of getting better, he is forgetting everything."
Q: Is that all that was said?
A: No.
Q: What else was said?
A: Then he was like if I fire him, he can go back to India, because he says that he has a big lot over there that he's worth millions. He can go over there. I don't need that f'n Indian here wasting my time.

\* \* \*

(continued...)

In 1998, plaintiff reported a discussion he had with Russo on religion to another foreman but did not report or discuss Russo's conduct with any one else employed with ANBM. In January, 2000, plaintiff requested his department supervisor, Mike Terakura ("Terakura"), to transfer him to another shift or department because he felt that Russo was not helping him properly. (¶28.) At this meeting, plaintiff did not talk to Terakura about Russo's derogatory remarks and conduct. (¶29.)

On February 4, 2000, Russo, as the acting foreman, conducted a daily pre-shift meeting, in which the foreman discussed priorities, safety issues and the day's agenda. (¶26.) On that day, the employees attending the daily meeting formed a circle with Russo in the center. (¶37.) At the initiation of this meeting, Russo called plaintiff to come and join the meeting, swinging his head in a "come here" motion. (¶38.) Plaintiff knew that Russo was motioning him to come closer so he could hear Russo speak. (¶39.) Plaintiff took two steps towards Russo (¶41), stopping approximately five feet, or one step, away. (¶42.) Russo got angry when plaintiff approached him and told plaintiff to get out of his face. (¶43.) Plaintiff then stepped back from Russo and said, "Thank you." Russo, however, accused plaintiff of saying "Fuck you."

---

[2](...continued)
Q: Did Mr. Russo tell you how he was going to fire Mr. Sultan?
A: No, no, he didn't.
Q: Did you report the conversation to any supervisor?
A: No. Like I said, usually between management, we don't try to get anybody on bad eyes of higher management.
(Def.'s Reply in Support of Mot. for Summary Judgment Ex. A.)
ANBM points out that this testimony does not support an inference that Russo wished to fire plaintiff because he was Indian. In the interests of justice and in the interests of expediting this litigation, the court will incorporate plaintiff's intent-to-fire theory on the part of Russo in its analysis of defendant's motion for summary judgment.

4

Russo interpreted plaintiff's conduct as insubordination and reported it to Ron Westrom ("Westrom"), the Human Resources Manager. (¶46.) Westrom immediately investigated the incident. (¶48.) Westrom spoke with and obtained a written statement from Russo and witness Floyd Turner ("Turner"), and spoke with witnesses Tim Lester, Paula Henkel and Nan Tran. (Westrom Aff. ¶8.) Westrom also spoke with plaintiff. (*Id.* ¶8.) Prior to and during this time, plaintiff did not advise Westrom of any of the treatment accorded him by Russo as described above. (*Id.* ¶14.) Westrom then prepared a summary of his findings, including the statements by Russo and Turner. Westrom's summary and his decision to terminate plaintiff were reviewed and approved by John Welch ("Welch"), General Manager of ANBM. Welch had the final authority to approve or disapprove of the corrective action, and he approved Westrom's decision to terminate plaintiff. On February 4, 2000, Westrom terminated plaintiff.

In plaintiff's opinion, Westrom fired plaintiff because he was Indian based on Westrom's expressions and quick decision because "[Westrom] just believed [that plaintiff said the profanity] like Indians are degrading people, Indian people don't know any respect." (¶48.) Westrom, however, insists that his decision to terminate plaintiff was "independently made based on the evidence before [him] at the time and was in no way based upon Mr. Sultan's religious or ethnic background." (Westrom Aff. ¶15.)[3]

---

[3] Welch also insists that neither prior to nor during the making of his decision to approve plaintiff's termination was he advised that plaintiff had any allegations of disparate treatment by Russo. (Welch Aff. ¶12.) The termination was based on plaintiff's conduct on February 4, 2000, which Welch concluded was in violation of ANBM's policies for proper business conduct. (*Id.* ¶13.) Welch attests that his decision to approve plaintiff's termination was independently made based on the evidence before him and was not based on plaintiff's religious or ethnic background. (*Id.*)

5

## ANALYSIS

Under Title VII, an employer cannot "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from "requiring people to work in a discriminatory hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).[4]

### A. Discrimination

In order to prevail on his claim of discrimination, plaintiff must establish that his termination would not have occurred but for Russo's motive to discriminate against him because of his national origin or religion. *See Pafford v. Herman*, 148 F.3d 658, 669 (7th Cir. 1998). Plaintiff may meet his burden of proof either through offering direct proof of discriminatory intent or by proving disparate treatment through the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001). "Under the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Id.*, citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Plaintiff may demonstrate his case with evidence which, if believed by a trier of fact, will prove the particular fact in question without reliance upon inference or presumption. *Eiland v. Trinity Hospital*, 150 F.3d 747, 751

---

[4]Liberally construing plaintiff's complaint and response to ANBM's motion for summary judgment, the court analyzes defendant's liability under a claim either for discrimination/disparate treatment or for hostile environment.

(7th Cir. 1998), quoting *Plair v. E.J. Branch & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). Further, a proffer of direct evidence must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question. *Plair*, 105 F.3d at 347.

Plaintiff initially argues that he has direct proof of discrimination based on Russo's remarks to plaintiff and further asserts that there is a genuine issue of material fact as to whether Russo is a decision maker, thus relating the harassment to the employment decision at issue. Plaintiff, however, has no evidence that any of the derogatory remarks were related to the specific employment decision in question, plaintiff's termination. More importantly, the record clearly establishes that Westrom and Welch, and not Russo, were the decision makers because Russo had no involvement in the decision to fire plaintiff. It is undisputed that Westrom conducted an investigation of the incident, interviewing and relying on information from several disinterested witnesses as well as the two involved, plaintiff and Russo. There is no evidence that Russo was consulted about the decision to fire plaintiff. Further, there is no evidence that Westrom and Welch knew of Russo's anti-Indian (or conceivably anti-Muslim) conduct at the time the decision was made, as plaintiff admits that he did not relate Russo's offensive statements to Westrom and he has no circumstantial proof. *Eiland*, 150 F.3d at 751; *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (describing as "cat's paw" evidence where the discriminatory animus of a non-decision maker may be attributed to the employer, where there is evidence that the decision maker(s) acts as the conduit for the prejudice of another person whose influence in the adverse action is decisive). Thus, plaintiff has not demonstrated direct proof of discrimination.

7

Under the *McDonnell Douglas* burden-shifting method, plaintiff must raise an inference of discrimination by offering sufficient evidence to make out a prima facie case. *Contreras*, 237 F.3d at 759. Plaintiff must demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) ANBM treated similarly situated employees outside of his protected class more favorably. *Id.* If plaintiff can make a prima facie showing, then a presumption arises that plaintiff was discriminated against, and ANBM must come forward with a legitimate nondiscriminatory reason for the employment action. *Id.* at 760. At this stage, ANBM need not prove that it was actually motivated by the proffered reason. Rather, ANBM "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.*, quoting *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 257 (1981). Once ANBM has met this burden of production, plaintiff must prove by a preponderance of the evidence that the reason offered by defendant is merely a pretext for discrimination. *Contreras*, 237 F.3d at 760. As such, "[t]his court looks to determine if a factual dispute exists as to whether the employer's reasons for its decision are honest and genuinely motivated." *Plair*, 105 F.3d at 348, citing *Sirvidas* v. *Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995). Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Sirvidas*, 60 F.3d at 378.

Plaintiff is unable to make a prima facie showing of discrimination. Even though he may establish that he was in a protected class because he is Indian and Muslim and that he was

performing his job satisfactorily (he was not fired for poor performance), he has no evidence that anyone outside of his protected class was treated more favorably in similar circumstances. Thus, the court is presented with a situation in which a supervisor investigates an incident and, after interviewing witnesses, determines that plaintiff broke a work rule and fired him. Without either direct evidence (as discussed above) or a person outside his protected group treated more favorably, there is no prima facie case of discrimination.

Even if the pretext issue is considered, plaintiff has not proffered evidence supporting an inference that ANBM's stated reason for the discharge is false. Rather, like the plaintiff in *Ghosh v. Indiana Department of Environmental Management*, 192 F.3d 1087, 1093 (7th Cir. 1999), a case which plaintiff cites, plaintiff, "who bears the burden of proof on this issue, has presented no evidence which would support a conclusion that the explanation [by defendant] was a lie or completely lacking in factual basis."[5] This court does not sit as a super-personnel department to review whether the employer was either wise or correct. *See Guerrero v. Ashcroft*, 253 F.3d 309, 314 (7th Cir. 2001) ("[W]e are not a super- personnel board and . . . may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us."). For these reasons, summary judgment is granted in favor of defendant with respect to plaintiff's claim of discrimination based on his discharge.

---

[5]Plaintiff's testimony about Westrom's behavior towards plaintiff during their meeting raises at best merely a "metaphysical doubt" as to whether plaintiff's national origin might have had some influence on Westrom's decision to terminate plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[plaintiff] must do more than simply show that there is some metaphysical doubt as to the material facts.").

9

**B.  Hostile environment**

Plaintiff's claim of a hostile environment pertaining to his national origin or religion also fails as a matter of law. To prevail on this claim, plaintiff must show that his work environment was both subjectively and objectively hostile. *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998). Assuming plaintiff can establish that his environment was subjectively hostile, plaintiff must still establish that his environment was objectively hostile. "An objectively hostile environment is one that a reasonable person would fine hostile or abusive. . . . In determining whether a plaintiff has met this standard, courts must consider all the circumstances, including the frequency of the discriminatory conduct, its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal citations and quotations omitted.).

The court will assume for the purposes of adjudicating ANBM's motion that plaintiff was subjected to a hostile environment based on Russo's harassing conduct. ANBM's liability depends on whether Russo was plaintiff's supervisor or co-employee. *Parkins v. Civil Constr. of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). If Russo was a supervisor, then ANBM is strictly liable, but if he was a mere co-employee, then ANBM is liable only if it was negligent either in discovering or remedying the harassment. *Id.*

To determine whether Russo was a supervisor, the court must consider whether Russo had the "authority to affect the terms and conditions of [plaintiff's] employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer." *Id.*; *compare id.* at 1032-35 (court

concluded harassers were not supervisors because, in part, while foremen could recommended that an employee be discharged, the discretion to take such action was not entrusted to them), with *Gawley v. Indiana University*, 276 F.3d 301, 310 (7th Cir. 2001) (court considered harasser to be a supervisor because he could delay plaintiff's ability to get requested equipment, was entrusted with powers that rendered subordinates less likely to blow the whistle on him, and worked in a department that operated in a paramilitary hierarchy in which subordinates were obligated to obey the commands of all superiors, not just direct supervisors). While Russo may have had some authority as foreman over plaintiff to oversee ANBM's operations,[6] there is no evidence that Russo had authority to hire, fire, demote, promote, transfer, or discipline plaintiff. *Parkins*, 163 F.3d at 1033. Thus, the court finds that Russo was not a supervisor for purposes of a hostile environment analysis.

"An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of [national origin or religious] harassment by its employees." *Id.* As to whether ANBM had notice of harassment, the court in *Parkins* states,

> [W]e first determine whether the employer has designated a channel for complaints of harassment. *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir.1997). Where an employer sets up a "point person" to accept complaints, "this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Young*, 123 F.3d at 674. Where a point person was not identified or easily accessible, an employer can receive notice of harassment from a "department head" or someone that "the complainant *reasonably believed* was authorized to receive and forward (or respond to) a complaint of harassment." *Id.* With respect to the extent of the notice given to an employer, a plaintiff "cannot withstand summary judgment without presenting evidence that [he] gave the employer enough information to

---

[6]Plaintiff provides no evidence on the record in response to defendant's evidence that Westrom and Welch, and not Russo, were the supervisors; therefore, the court need not engage in a lengthy analysis as the courts in *Parkins* and *Gawley* did.

11

> make a reasonable employer think there was some probability that [he] was being
> ... harassed." *Zimmerman* v. *Cook County Sheriff's Dep't*, 96 F.3d 1017, 1019 (7th Cir.1996).

*Id.* Plaintiff here has not established that ANBM had notice of harassment or even enough information to make a reasonable employer think there was some probability that harassment existed. Plaintiff admits that he understood the terms set forth in the employee handbook, which directs an "employee who feels harassed by any member of the organization [to] report the situation to his or her immediate supervisor or the Human Resources Department." (Def.'s Ex. F at p. D-2.) There is no evidence that plaintiff communicated his concern to any person under this policy. Even when allowed to supply his version of events pertaining to February 4, 2000 to Westrom, plaintiff failed to speak up about any of Russo's conduct towards him. In 1998, plaintiff reported his discussion on religion with Russo to another foreman, but did not report or discuss Russo's conduct with any one else employed by ANBM. All plaintiff presents is that in January, 2000, plaintiff requested his department supervisor, Terakura, to transfer him to another shift or department because he felt that Russo was not helping him properly. At this meeting, plaintiff did not talk to Terakura about Russo's harassing conduct. Plaintiff provides no evidence from which an inference can be drawn that ANBM knew or had any reason to know that Russo was harassing plaintiff. Therefore, plaintiff's claim of hostile environment based on his national origin and religion must fail.

## ORDER

For the reasons stated above, the court grants defendant's motion for summary judgment [#21] on all claims. The clerk is directed to enter judgment in favor of defendant.

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 4, 2002